**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-89-DLB**

**SIDI OULD AHMED**                                                    **PETITIONER**

**v.**                            **MEMORANDUM OPINION AND ORDER**

**SAMUEL OLSON, et al.,**                                      **RESPONDENTS**

**\* \* \* \* \* \* \* \* \* \***

## I.    INTRODUCTION

This matter is before the Court on Petitioner Sidi Ould Ahmed's Petition for Writ of Habeas Corpus (Doc. # 1) and Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 3).  Respondents[1] having filed their Response (Doc. # 5), and Petitioner filing his Reply (Doc. # 6) this matter is now ripe for review.  For the following reasons, the Court will **grant** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Sidi Ould Ahmed is a native and citizen of Mauritania.  (Doc. # 1 ¶ 20). Petitioner entered the United States on August 17, 2001 on an F-1 student visa.  (*Id*.). On October 27, 2001 he filed an application for asylum and withholding of removal.  (*Id*. ¶ 21).  Petitioner states that his asylum claim was based on an outstanding arrest order

---

[1]    Petitioner files this action against Samuel Olson, Chicago Field Office Director, Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, Acting Director, ICE; Kristi Noem; Secretary, U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States ("Respondents").  (Doc. # 1 at 1).  Petitioner additionally filed this action against Marc Fields, Jailer, Kenton County Detention Center.  (*Id*.).  Respondent Fields did not file a Response and the time to do so has passed.

in Mauritania that stems from non-violent student activism against the Mauritanian government. (*Id*. ¶ 28). On December 16, 2003, Petitioner was served a Notice to Appear. (*Id*. ¶ 22). On January 12, 2005, he appeared in the Memphis Immigration Court where an Immigration Judge ("IJ") denied his asylum claim. (*Id*.; *see also* Doc. # 5-2). He appealed this decision to the Board of Immigration Appeals ("BIA") on January 26, 2005. (Doc. # 1 ¶ 23). On October 28, 2005 the BIA denied his appeal. (Doc. # 5 at 2; *see also* Doc. # 5-3).[2] Petitioner was ordered removed on April 11, 2006. (Doc. # 1 ¶ 24; *see also* Docs. # 1-14 and 5-8). However, Petitioner was never removed. Rather, on March 19, 2009 Petitioner was taken into custody by ICE and released on an Order of Supervision ("OSUP"). (Doc. # 1 ¶ 24). Petitioner complied with the terms of his supervision, and as detailed by his Personal Report Record, continued to appear for his scheduled check-ins through 2025. (Doc. # 1-4 at 6-10).[3]

On January 21, 2026, officials with the Intensive Supervision Appearance Program ("ISAP"), an ICE Alternative to Detention program, requested that Petitioner present himself. (Doc. # 1 ¶ 25). A Warrant of Removal/Deportation was issued on the same date, and Petitioner was subsequently served with a Warrant for Arrest of Alien when he presented himself to officials. (Doc. # 5 at 2). Petitioner was then taken into custody

---

[2] Petitioner filed a Motion to Reopen on April 11, 2006 and on June 2, 2010, both of which were denied by the BIA. (Doc. # 5 at 2). Petitioner appealed the 2010 decision to the United States Court of Appeals for the Sixth Circuit, which was denied for review in 2012. (Doc. # 5 at 2; *see also* Doc. # 5-5).

[3] Of note, during the time that Petitioner was out on OSUP, his wife Emekelthoume Abdi entered the United States on a visitor's visa in 2019. (*Id*. ¶ 2). She was granted asylee status on October 5, 2021, and granted lawful permanent resident status on May 1, 2022. (*Id*.). Mr. Ahmed and Mrs. Abdi have two young children and additionally raise Mr. Ahmed's nineteen-year-old daughter. (*Id*.). Petitioner is currently a beneficiary of a pending Form I-730 Asylee Relative Petition, filed by Mrs. Abdi on August 8, 2022. (*Id*.; *see also* Doc. # 1-1).

and transferred to the Kenton County Detention Center in Covington, Kentucky. (Doc. # 1 ¶ 25). On February 17, 2026, ICE sent a letter to the Consul General of Mauritania, requesting a travel document on behalf of the Petitioner. (Doc. # 5 at 3; *see also* Doc. # 5-9). Respondents contend that as soon as the travel document is received, "Petitioner's removal will be imminent." (Doc. # 5 at 3).

On February 25, 2026, Ahmed filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1). In his Petition Ahmed argues that he is being wrongly detained at the Kenton County Detention Center and requests that the Court order his immediate release to the conditions of his preexisting Order of Supervision. (*Id.* at 20). On March 2, 2026, the Court directed Respondents to respond to the Petition. (Doc. # 4). Respondents having filed their Response (Doc. # 5), and Petitioner having filed his Reply (Doc. # 6), this matter is ripe for the Court's review.

## III.    ANALYSIS

Petitioner contends that the revocation of his OSUP without notice violates established revocation of release procedures pursuant to 8 C.F.R. §§ 241.4(l) and 8 C.F.R. § 241.13(i), depriving him of his Fifth Amendment right to due process. (Doc. # 1 ¶¶ 63-73). Petitioner therefore requests that this Court order Respondents to immediately release him under the conditions of his preexisting OSUP. (*Id.* at 20).

### A.    Relevant Framework

The parties agree that Petitioner is currently detained pursuant to 8 U.S.C. § 1231(a), which is titled "Detention and removal of aliens ordered removed." Section 1231 is designed to govern the process of noncitizens who are "detained, issued an order of removal, and subject to removal and supervision." *K.E.O. v. Woosley*, No. 4:25-cv-74-

3

RGJ, 2025 WL 2553394, at *3 (W.D. Ky. Sept. 4, 2025).  Promulgated under § 1231, 8 C.F.R. §§ 241.4 and 241.13 have been implemented to help effectuate the purpose of § 1231.

8 C.F.R. § 241.4, which is titled "Continued detention of inadmissible, criminal, and other aliens beyond the removal period" dictates the removal process and allows for ICE officials to have "authority to continue an alien in custody or grant release or parole."  8 C.F.R. § 241.4(a).   A noncitizen may be granted release under OSUP if they "demonstrate[] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States."  § 241.4(d)(1).  Pertinent to this case is § 241.4(l)(2), which controls ICE officials' authority to revoke release, absent any violation of OSUP conditions.  There, ICE officials have, in very limited circumstances, the "authority, in the exercise of discretion, to revoke release and return to [ICE] custody an alien previously approved for release under the procedures in this section."  § 241.4(l)(2).  The four circumstances that ICE officials may revoke release are if:

> (i) The purpose of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2).  It is important to note that "[t]hese regulations are still limited by the Constitution."  *K.E.O.*, 2025 WL 2553394, at *4; *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

4

Additionally, 8 C.F.R. § 241.13(a), which cross references 8 C.F.R. § 241.4, states

> This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

This section applies only when "there is no significant likelihood of removal in the reasonably foreseeable future."  § 241.13(b)(1).  In that case, ICE may revoke release upon a violation or if "changed circumstances" have led to a determination that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  § 241.13(i)(1)-(2).  If ICE intends to revoke release, they must (1) notify the noncitizen the reasons for revocation (2) conduct an initial informal interview promptly afterward to afford the noncitizen an opportunity to respond to the reasons for revocation stated in the notification and (3) allow the noncitizen to submit any evidence or information to demonstrate there is no "significant likelihood" of removal in the "reasonably foreseeable future" or that the noncitizen "has not violated the order of supervision."  § 241.13(i)(3)

### B.    Application to Petitioner

Petitioner alleges, among other things, that his detention violates his Fifth Amendment right to due process because ICE "revoked his order of supervision without sufficient notice and opportunity to respond" in violation of §§ 241.4(l) and 241.13(i).  (Doc. # 1 at 11).  Specifically, Petitioner argues that the "government's detention of [him] without a determination that he violated a condition of release or an individualized determination by a qualified individual that revocation of the OSUP was appropriate, as well as the government's failure to provide an interview and opportunity to present evidence, violates

the regulations." (Doc. # 1 ¶ 69). In Response, Respondents argue that Petitioner was not guaranteed notice or interview requirements, and therefore his "complaints about lack of process for revoking his order of supervision are unfounded." (Doc. # 5 at 6).

In *United States v. Accardi*, the Supreme Court held that when the government implements regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." 347 U.S. 260, 266-68 (1954). Prejudice may be presumed when "compliance with the regulation is not mandated by the Constitution" and "where an entire procedural framework, designed to insure [sic] the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986). In their Response, Respondents argue that "Petitioner's revocation was under 8 C.F.R. § 241.4(l)(2)(iii) to enforce a removal order, which has no such notice or interview requirements." (Doc. # 5 at 5). Petitioner points to § 241.13(i)(3) to support his argument that he was entitled to notice of the reasons for revocation and an initial informal interview to allow him to respond to those reasons. (Doc. # 6 at 10-11).

As previously noted, § 241.13 governs revocation of OSUP when ICE previously "ma[de] a determination . . . that there is no significant likelihood of removal in the reasonably foreseeable future." § 241.13(b)(1). Once that determination has been made, ICE may subsequently "revoke [the] alien's release . . . and return the alien to custody if, on account of changed circumstances, [it] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2). "Upon revocation, the alien will be notified of the reasons for revocation of his or her release[, and ICE] will conduct an initial informal interview . . . to afford the alien an

6

opportunity to respond to the reasons for revocation stated in the notification." §
241.13(i)(3).   Courts have previously determined that "[w]hen § 241.13(i) governs
revocation, the procedures outlined for revocation under § 241.4(l) do not apply." *Choy*
*v. Woosely*, No. 4:25-cv-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026); *see*
*also Saengnakhone S. v. Noem*, No. 25-cv-4775, 2026 WL 34132, at *5 (D. Minn. Jan. 6,
2025) ("ICE previously determined that there was not a significant likelihood of his
removal, and therefore § 241.4 does not govern the re-detention decision." (citations
omitted)).

In this case, ICE explicitly invoked §§ 241.4 and 241.13 by stating in its Notice to
Petitioner that there was a "determination that there are changed circumstances in your
case" and that ICE had determined that he could be "expeditiously removed from the
United States[.]"  (Doc. # 5-8).  This language parrots § 241.13(i)(2).  Moreover, the Notice
explicitly states that pursuant to both §§ 241.4 and 241.13 "immediate revocation is the
most appropriate course of action."  (*Id*.); *see also Qui v. Carter*, No. 25-3131-JWL, 2025
WL 2770502, at *2 (D. Kan. Sept. 26, 2025) ("[T]he Notice of Revocation of Release for
petitioner explicitly cited both Section 241.4 and Section 241.13. Thus the Notice itself
contradicts respondents' present argument that the procedural requirements of Section
241.13 do not apply here.").  Therefore, "[w]hen an Order of Supervision is revoked
pursuant to § 241.13(i), notice and an interview are required."  *Choy*, 2026 WL 324601,
at * 3 (citing *K.E.O.*, 2025 WL 2553394).  While Petitioner did receive a Notice, he argues
that the Notice was inadequate because it consisted of "boiler plate" language that his
circumstances had changed and was therefore not an individualized assessment.  (Doc.
# 6 at 8).

7

"[I]n the context of a habeas challenge to re-detention under § 241.13, ICE bears the burden of producing some evidence of changed circumstances." *Choy*, 2026 WL 324601 at *4 (footnote omitted); *see also Roble v. Bondi*, 803 F. Supp. 3d. 766, 772 (D. Minn. 2025) ("Although [Petitioner] has the ultimate burden of proving entitlement to habeas relief, the regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future.") (citation omitted).  ICE must, upon revocation, include "adequate notice of the basis for the revocation decision such that [the noncitizen can] meaningfully respond at the post-detention 'informal interview.'" *Choy*, 2026 WL 324601, at *4 (quoting *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025).  "Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough. Petitioner must be told what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully proceed." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Min.. 2025).

Courts across the country have repeatedly held that this boiler plate language is simply insufficient to give notice under § 241.13.  *See Vu Quoc Pham v. Warden et al*., No. 1:25-cv-1873, 2026 WL 673404, at *9 (E.D. Cal. Mar. 10, 2026) (finding that a Notice which merely states that circumstances have changed is "vague and conclusory because it does not provide any information regarding the changed circumstances and how the changed circumstances made petitioner's removal significantly likely in the reasonably foreseeable future"); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. June 20, 2025) ("Respondents did not identify any facts to support that ICE re-detained [the petitioner] based on changed circumstances that would show his removal to be significantly likely in

8

the reasonably foreseeable future."); *Sarail A.*, 803 F. Supp. 3d at 780 ("ICE identified the category—'changed circumstances'—but failed to notify [the petitioner] of the reason— the circumstances that changed and created a significant likelihood of removal in the reasonably foreseeable future—so it failed to follow the relevant regulation."); *Hall v. Nessinger*, No. 25-cv-667, 2026 WL 18538, at *7 (D. R.I. Jan. 2, 2026) ("Indeed, dozens of federal courts across the country have analyzed identically worded notifications by ICE and have found them to be deficient.").  Here, Respondents do not expand on their reason for revoking supervision.  Rather, they recite the boilerplate language from the Notice, arguing that it "very clearly state[s] the reason for the revocation."  (Doc. # 5 at 6).  This is simply insufficient.

Moreover, the Notice states that Petitioner's case was "under current review . . . for the issuance of a travel document."  (Doc. # 5-8).  However, district courts have repeatedly found that the "mere request of a travel document by ICE is not a changed circumstances supporting re-detention under § 241.13."  *Choy*, 2026 WL 324601, at *5; *see also Nguyen*, 788 F. Supp. 3d at 152 (processing of a travel document "provided scant information" and was therefore insufficient in proving changed circumstances); *Qui*, 2025 WL 2770502, at *4 ("Respondents have cited no other reason to believe that removal is likely in the foreseeable future other than their declarant's statement . . . that efforts to obtain a travel document for petitioner would continue[.]"); *Hoac v. Becerra*, No. 2:25-cv-1740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance.").  The extent of Respondents' argument that the request for a travel document is sufficient evidence is that "as soon as that travel document is received,

9

Petitioner's removal will be imminent." (Doc. # 5 at 3). Yet they never state when, if at all, they expect to receive this document. *See Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025) (finding no changed circumstances because "respondents have not yet provided evidence that officials had had more success recently obtaining travel documents."). Therefore, the mere fact that a travel document request has been submitted to Mauritania is simply insufficient to demonstrate changed circumstances. This conclusion is bolstered by the fact that this request for a travel document was submitted *weeks* after Petitioner was detained, leading the Court to conclude that Respondents had even less evidence at the time Petitioner was detained. *See Hall*, 2026 WL 18538, at *8 (finding that ICE failed to provide the petitioner with sufficient notice, stating that his case was "under review by Liberia for the issuance of a travel document" but "Liberia had not actually issued any travel document when he was detained.").

Respondents have also asserted that ICE issued the Warrant of Removal "[a]fter many years of Petitioner's failure to self-deport[.]" (Doc. # 5 at 2). However, the *Choy* case out of the Western District of Kentucky addressed this argument, noting that "[w]hile this factor can support a finding of changed circumstances in some cases . . . there is no evidence that the respondents told [the petitioner] that this was a reason for her re-detention when they provided her notice." 2025 WL 324601, at *5. Accordingly, Respondents "may not rationalize a re-detention after the fact; rather the reason must be articulated to the detainee so that he has 'a meaningful opportunity to respond to the reasons and to submit evidence in opposition.'" *Id*. at *6 (quoting *Sarail A.*, 803 F. Supp. 3d at 787); *see also id*. ("Respondents' post-hoc explanation is too little, and too late.").

10

In sum, the Notice provided to Petitioner did not satisfy the requirements of § 241.13 because it failed to adequately explain what circumstances changed, allowing Petitioner to properly respond. This Court joins others in finding that "[t]his failure prejudiced [Petitioner] and violated [his] due process rights by denying [him] an opportunity to respond."[4] *Choy* 2026 WL 324601, at *6; *see also Hall*, 2026 WL 18583, at *7 ("ICE's failure to provide a noncitizen with adequate notice of its basis for revoking supervised release violates the noncitizen's due process rights.")

## C.    Appropriate Remedy

Because the Court has concluded that Petitioner's due process rights were violated when Respondents revoked his OSUP without adequate notice and opportunity to be heard, the Court must now determine what the adequate remedy shall be. In his Petition, Petitioner seeks "immediate[] release [] under the conditions of his preexisting Order of Supervision." (Doc. # 1 at 20). Respondents, however, argue that "ICE should [] be ordered to complete the procedural requirement." (Doc. # 5 at 6).

In looking towards other district courts for guidance, this Court finds that the only appropriate remedy is immediate release pursuant to the conditions of Petitioner's preexisting OSUP. As determined above, Petitioner has been prejudiced by the denial of

---

4        While Petitioner was granted an informal interview (Doc. # 5-8), the Court finds that this is not enough to cure the ills of the improper Notice. First, without proper notice, Petitioner would have no way to properly prepare for the informal interview. If Petitioner did not know *why* conditions suddenly changed, how could he prepare to meaningfully respond to those alleged conditions? Moreover, in his Reply, Petitioner alleges that the interviewer failed to notate the form of whether Petitioner wished to provide any documents on his behalf, and thus he had to proceed with the interview without the benefit of counsel or evidence. (Doc. # 6 at 8). Petitioner argues that "it is clear that had Petitioner been given a meaningful opportunity to present evidence, he would have done so." (*Id.*). Therefore, the fact that Petitioner was not given a meaningful notice, nor a meaningful informal interview, solidifies this Court's conclusion that his due process rights were violated.

his due process rights. Respondents revoked his OSUP without proper notice, and thus, because "no clear reason has ever been articulated, [Petitioner] continues to be denied a meaningful opportunity to challenge the revocation." *Choy*, 2026 WL 324601, at *7.[5] Under such circumstances, this Court joins courts all across the country in finding that release is the only appropriate remedy. *See id.* ("Under these circumstances, release is appropriate."); *K.E.O*, 2025 WL 2553394, at *7 ("As a remedy, courts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Nguyen*, 788 F. Supp. 3d at 153 ("Based on ICE's violations of its own regulations, I conclude that [the petitioner's] detention is unlawful and that his release is appropriate."); *Sarail A.*, 803 F. Supp. 3d at 788-89 ("[T]he Court recommends that . . . Petitioner be released subject to the conditions in his previous order of supervision."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 389 (D. Mass. Nov. 8, 2017) ("ICE failed to follow its own regulations" and therefore the petitioner is "released [] pursuant to the conditions in his preexisting Order of Supervision."); *Liu*, 2025 WL 1696526, at *3 ("[T]he Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)").[6]

---

[5]    *Contrast with Karki v. Raycraft*, No. 2025 WL 3516782, at *7 (E.D. Mich. Dec. 8, 2025) (which denied release as a remedy after Respondents demonstrated that the requested travel documents had been approved and ICE had purchased tickets to return the petitioner to his country of origin).

[6]    Petitioner additionally filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction where he requests that this Court enjoin Defendant's from removing him from the Court's jurisdiction while his Petition for Writ of Habeas Corpus is adjudicated. (Doc. # 3). This Motion will be **denied** as moot.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Ahmed's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 3) is **DENIED AS MOOT**;

(3)    Respondents are **ORDERED** to **immediately release** Petitioner from custody, subject to the conditions of his preexisting Order of Supervision; and

(4)    Respondent shall file a Status Report with this Court **on or before April 6, 2026** to certify compliance with this Order.

This 26th day of March, 2026.



Signed By:

*David L. Bunning*

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-89 MOO re Habeas Petition.docx